UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-MC-20810-KMW

In re Application of Gyptec, S.A.

_____/

**CARLOS HAKIM-DACCACH'S VERIFIED RENEWED MOTION TO
QUASH SUBPOENA AND TO VACATE THE COURT'S ORDER
GRANTING GYPTEC'S 28 U.S.C. § 1782 APPLICATION**

HELLER WALDMAN P.L.
3250 Mary Street, Suite 102
Coconut Grove, Florida 33133
Telephone No:  (305) 448-4144
Facsimile:  (305) 448-4155

By:   ___/s/ Glen H. Waldman_____
        Glen H. Waldman, Esq.
        Fla. Bar No. 618624
        Michael A. Sayre, Esq.
        Fla. Bar. No. 17607

i

## TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................... ii

TABLE OF AUTHORITIES .............................................................................................. iv

INTRODUCTION ................................................................................................................1

BACKGROUND ..................................................................................................................2

    A. THE PARTIES TO THIS DISPUTE AND HAKIM'S INITIAL INVESTMENT .......................................................................................................2

    B. A COLOMBIAN ARBITRATION TRIBUNAL HAS ALREADY ADJUDICATED THAT HAKIM IS A ONE-THIRD OWNER OF GYPTEC AND FOUND THAT HAKIM DID NOT INTERFERE WITH USG NEGOTIATIONS (TWO ISSUES FOR WHICH GYPTEC PURPORTEDLY NEEDS DISCOVERY).............................................................3

    C. THE "COLOMBIAN CIVIL LITIGATION" ON WHICH GYPTEC BASES ITS APPLICATION AND HAS REPRESENTED IS AN ONGOING PROCEEDING HAS ACTUALLY CONCLUDED AND TAWIL AND DOW WERE FOUND LIABLE FOR EMBEZZLEMENT ...........6

    D. THIS COURT RELIED ON GYPTEC'S MISTATEMENTS AND OMISSIONS IN GRANTING THE APPLICATION ...........................................7

STANDARD OF REVIEW .................................................................................................9

ARGUMENT

    I. THE ORDER SHOULD BE VACATED AND THE SUBPOENA QUASHED BECAUSE THE DISCOVERY SOUGHT IS NOT – AND CANNOT – BE FOR USE IN A PROCEEDING BEFORE A FOREIGN TRIBUNAL ...................................................................................................10

        A. The Colombian Civil Litigation Does Not Qualify as the Necessary Foreign Proceeding Because it has Concluded and, In Any Event, the Amount of Hakim's Ownership was not an Issue in the Litigation ......................................................................................................11

        B. The Contemplated Colombian Proceeding Does Not Qualify as a Necessary Foreign Proceeding Because it Cannot be Reasonably Contemplated ...................................................................................................12

      i.  Hakim's Ownership Interest in Gyptec and Any Claim of Interference with USG Have Been Conclusively Decided ............12

      ii.  Gyptec has No More than a Subjective Intent to Bring Proceedings with Respect to Knauf, and, Further, the Colombian Civil Litigation Extinguishes Those Claims ..............13

II.    EVEN IF GYPTEC COULD SATISFY THE § 1782 MANDATORY FACTORS, THE *INTEL* DISCRETIONARY FACTORS WEIGH STRONGLY AGAINST § 1782 ASSISTANCE ....................................................14

    A.  The First Factor - that Hakim is a Party to the Foreign Proceedings - Dictates in Favor of Denial of the Application........................................14

    B.  The Subpoena Should be Quashed Because the Foreign Proceedings have Concluded and the Subpoena Seeks to Circumvent those Proceedings...................................................................16

    C.  The Fourth Factor Also Requires that the Order Granting the Application be Vacated Because the Discovery is Duplicative................18

III.   THE SUBPOENA SHOULD BE QUASHED BECAUSE THE APPLICATION WAS MADE IN BATH FAITH AND IS PREMISED ON MISSTATEMENTS........................................................................................18

    A.  Gyptec's Egregious Misrepresentations and Failure to Correct Other Representations Post-Filing Dictate Denial of the Application or at Least Should be Considered in the Court's Analysis of the Discretionary Factors........................................................19

    B.  Gyptec's Requested Discovery Constitutes Harassment, is Irrelevant and Otherwise Constitutes a Fishing Expedition ......................19

CONCLUSION..................................................................................................................20

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Certain Funds, Accounts and/or Investment Vehicles v. KPMG, LLP,*
  798 F.3d 113 (2d Cir. 2015)........................................................................................13, 14

*Green Development Corporation, S.A. De. C.V. v. Zamora,*
  2016 WL 2745844 (S.D. Fla. May 10, 2016) ...................................10, 11, 15, 18, 19

*HT S.R.L. v. Velasco,*
  125 F. Supp. 3d 211 (D.D.C. 2015) .........................................................................17

*Kestrel Coal Pty. Ltd. v. Joy Global, Inc.,*
  362 F.3d 401 (7th Cir.2004) ....................................................................................15

*In Matter of Application of Leret,*
  51 F. Supp. 3d 66 (D.D.C. 2014) ............................................................................16

*In re Application of Caratube Int'il Oil Co. LLP,*
  730 F. Supp. 2d 101 (D.D.C.2010) ..........................................................................17

*In re Clerici,*
  4481 F.3d 1324 (11th Cir.2007) ..............................................................................16

*In re Euromepa, S.A.,*
  154 F.3d 24 (2d Cir.1998)........................................................................................12

*In re Ishihara Chem. Co.,*
  251 F.3d 120 (2d Cir.2001)......................................................................................12

*In re Kivisto,*
  521 Fed. Appx. 886 (11th Cir. 2013) .......................................................................19

*In re Kreke Immobilien KG,*
  2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013)............................................................17

*In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG,*
  2015 WL 5824505 (S.D.N.Y. Oct. 6, 2015) .....................................................10, 13

*In re: Request for Assistance,*
  848 F. 2d 1151 (11th Cir. 1988) ...............................................................................6

*In re PIC Do Nordeste, LTDA,*

2012 WL 4448886 (E.D.Mich. Sep.25, 2012) ..................................................................18, 20

*Intel Corp. v. Advanced Micro Devices, Inc.,*
    542 U.S. 241 (2004) ..........................................................................10, 12, 15, 18

*Schoenman v. FBI,*
    763 F. Supp. 2d 173 (D.D.C. 2011) ..........................................................................20

**Other Authorities**

Fed. R. Civ. P. 26 ..........................................................................................................1

Fed. R. Civ. P. 45 ..........................................................................................................1

28 U.S.C. § 1782 ......................................................................................................1, 10

{00214641.DOCX }

Carlos Hakim-Daccach ("Hakim"), pursuant to Rules 26 (c) and 45 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1782, files this Renewed Motion to Quash the Subpoena Duces Tecum served on Hakim by Gyptec, S.A. ("Gyptec") and To Vacate the Court's Order Granting Gyptec's 28 U.S.C. § 1782 Application (the "Order").

## INTRODUCTION

This Application represents Gyptec's latest attempt in a long-running dispute to reopen issues that it has decisively lost.  Gyptec has blatantly abused § 1782 by seeking from Hakim discovery regarding issues on which Hakim already prevailed in a long since concluded action to which Hakim and Gyptec were both parties.  Because Gyptec does not seek discovery for use in any foreign or international tribunal that would satisfy § 1782 or otherwise weigh in favor of discovery under the *Intel* factors, and because the Application is nothing more than a transparent means to harass Hakim, the Court should vacate the Order and quash the Subpoena.

Gyptec's Application for § 1782 discovery is replete with misrepresentations and omissions.  The Court, in granting the Application, relied on these demonstrably false statements.  The Order must be vacated and the Subpoena quashed, because, as detailed below: (1) the primary focus of the requested discovery is over an issue already decided, because a tribunal of competent jurisdiction conclusively found that Hakim has a one-third ownership interest in Gyptec; (2) the proceeding before the *Superintendencia* is not ongoing, because of a June 9, 2016 ruling in favor of Hakim finding that Gyptec's board breached its fiduciary duties; and (3) any purported "contemplated proceedings" regarding Hakim's alleged tortious interference with Gyptec's negotiations with USG International Ltd. ("USG") are illusory, as this issue was previously raised as a counterclaim and definitively rejected.  The requested discovery therefore would serve no purpose other than to harass Hakim by re-litigating issues already squarely addressed and decided in proceedings in Colombia and Panama.  The Application thus fails to meet the mandatory requirements of § 1782 given the absence of any current or contemplated proceedings.

The application of the discretionary *Intel* factors compels the same conclusion.  Gyptec is attempting to use § 1782 merely as a tool to circumvent the fact that the foreign proceedings have ended.  Where, as here, a party is seeking discovery from a party who has already participated in discovery in the foreign proceedings, and will be a party to any contemplated future proceedings, the Court can, and should, exercise its discretion in denying the Application.

1

This is all the more so when, as is the case here, the discovery sought is plainly an attempt to circumvent the finality of those foreign proceedings.

Finally, given the numerous misstatements made by Gyptec to the Court mischaracterizing the nature of these prior proceedings, and the harassing nature of the Application, including the fact that this Application is nothing more than an improper attempt to open up a United States front to litigation that is inherently Colombian in nature, the Court can and should deny the Application outright.  Accordingly, this Motion should be granted and this Court's earlier Order granting the Application vacated.

### BACKGROUND

As described in detail below, this Application stems from a dispute spanning at least five years, in which Hakim, the target of the requested discovery, has successfully litigated both his ownership interest in Gyptec, as well as the Board of Gyptec's embezzlement of funds.  Hakim now awaits the transfer of his ownership interest in Gyptec to be effectuated, as ordered by an arbitral tribunal, and recognized and enforced by the Supreme Court of Panama.  Rather than comply with this obligation, Gyptec has brought this proceeding seeking discovery that previously was available to it in Colombia on issues that have now largely been decided.

### A. THE PARTIES TO THIS DISPUTE AND HAKIM'S INITIAL INVESTMENT IN GYPTEC

1. Hakim is an MIT and Harvard educated neuroscientist and biomedical engineer, and splits his time between the United States and Colombia.  Hakim's father, Dr. Salomon Hakim ("Salomon"), was a Colombian neurosurgeon, researcher, and inventor.

2. Salomon's brother is Alejandro Hakim Dow ("Dow").  Dow's two sons – and Hakim's cousins – are Alejandro Hakim Tawil's ("A. Tawil") – now deceased – and Jorge Hakim Tawil ("Tawil").  Tawil was a part owner of Gyptec— – the Colombian drywall business headquartered in Bogota, Colombia that issued the Subpoena and was recently sold.  Tawil, unfortunately, fell far from the family tree.  Tawil is (or, at minimum, at one point was) a fugitive from the law.  Tawil was indicted in New York several years ago for bank embezzlement.  *See* Criminal Docket, attached as Exhibit "A."

3. Hakim's ownership interest in Gyptec has been disputed between the parties for a number of years, resulting in several legal proceedings in both Colombia and Panama.  *See* Declaration of Luis Alfredo Barragán ("Barragán Aff."), ¶ 3, attached as Exhibit "B."   As

2

explained further below, Hakim's ownership interest in Gyptec has been admitted by Tawil and Dow in arbitral proceedings, which ultimately ordered Tawil and Dow to return to Hakim the shares evidencing his ownership. *See* ¶¶ 7-10 *infra*.

**B. A COLOMBIAN ARBITRATION TRIBUNAL HAS ALREADY ADJUDICATED THAT HAKIM IS A ONE-THIRD OWNER OF GYPTEC AND FOUND THAT HAKIM DID NOT INTERFERE WITH USG NEGOTIATIONS (TWO ISSUES FOR WHICH GYPTEC PURPORTEDLY NEEDS DISCOVERY)**

4.      In April 2010, Hakim commenced arbitral proceedings against Tawil, seeking among other things recognition of Hakim's ownership of shares in Ukiah International Corp. ("Ukiah") and Arkata Investment, Inc. ("Arkata") (collectively "Panamanian companies). By Gyptec's own admission, the Panamanian companies own over 99% of Gyptec. *See* [D.E. #6, pg. 9]. The disputed shares represent a one-third ownership interest in the Panamanian companies. Hakim also sought an award directing Tawil to deliver those shares to Hakim, their rightful owner.

5.      Tawil filed a counterclaim (*Demanda de Reconvencion*) against Hakim for purported damages related to Hakim's alleged interference with Gyptec's negotiations with USG. *See* Counterclaim, attached as Exhibit "C." Hence, the two main issues covered by the Gyptec's Application were resolved by this arbitration: Hakim's ownership interest in Gyptec and alleged interference with the USG negotiations.

6.      As referenced in Gyptec's Application, Tawil introduced a "promise to buy and sell" agreement[1] in which Tawil himself recognized Hakim's 33% ownership of each of the Panamanian companies:

| Shareholder | No. of shares | Shareholding participation percentage (%) |
|---|---|---|
| ALEJANDRO HAKIM TAWIL | 4 | 33.33 |
| CARLOS HAKIM DACCACH | 4 | 33.33 |
| JORGE HAKIM TAWIL | 4 | 33.33 |

*See* [D.E. #6-6, pgs. 2-3].

7.      Dow, Tawil's father, whom Gyptec, in its Application, asserts holds the shares in the Panamanian companies and is thus the owner of the companies – also admitted before the

---

[1] The arbitration tribunal ultimately found the agreement itself was null and void. *See* October 10, 2011 Arbitration Award, pg. 22, attached as Exhibit "D."

3

tribunal that Hakim owned these shares; that he, Dow, did not own these shares; and that he would deliver the shares to whomever the tribunal directed they be delivered:

> **MR. ALVAREZ**: Do you acknowledge that a third of the shares you own are owned by Carlos?
> **MR. ALEJANDRO HAKIM DOW**: Well, I suppose because he is the shareholder, he is a partner of Gyptec . . .
>
> **MR. ALEJANDRO HAKIM DOW**: I have not made absolutely any observation about anything.  I am waiting to see what happens with this whole trial and with everything because I have the shares; I will deliver them to anyone when I am told that I must deliver them.  In the meantime, I have them here, nobody has asked for them, I have not requested anything, I have not told anyone that I have the shares or anything, they are here waiting to see whatever may happen after all this, I have not said that I will not deliver them if they do not deliver to me, at all.

*See* October 10, 2011 Arbitration Award, pgs. 16-17."  The tribunal noted this testimony in its arbitral award, issued on October 11, 2011(the "Award").  *See* Award, pgs. 16-17.

      8.     Given the overwhelming evidence and admissions that Hakim was the rightful owner of the shares, which represents a one-third ownership interest in the Panamanian companies, the tribunal directed Tawil and Kistna Overseas Corporation ("Kistna") – a company owned by Dow and to which Tawil indicated he had delivered the shares – to turn over the shares to Hakim, holding:[2]

> By way of mutual reimbursement, Jorge Hakim and/or Kistna Overseas Corporation are ordered to return to Carlos Hakim Daccah, within 5 days following the execution of this award the 4 shares owned by claimant subject to be traded in the purchase-sale commitment, in the compan[ies] ARKATA INVESTMENT, INC. [and] . . . UKIAH INTERNATIONAL CORPORATION.

*See* Award, pg. 23.

      9.     Contrary to the assertion made in the Application that Dow owns these shares, in the Award, the tribunal held that, while Dow may have been in possession of Hakim's shares, Hakim, not Dow, is the owner of the shares.  *See* Award, pg. 21 ("The material possession without ownership of the shares by ALEJANDRO HAKIM DOW does not diminish the ownership of the shares by CARLOS HAKIM, who may claim his property.").

---

[2] In the Application, Gyptec concedes that Dow owns Kistna.  *See* [D.E. #6, pg. 10, n. 15].

{00214641.DOCX }

10.     In the Award, the tribunal made the following additional findings demonstrating Hakim's ownership of the shares:

- "The affirmations of fact are precisely that the defendant JORGE HAKIM acknowledged the ownership of the shares by CARLOS HAKIM;"
- "Neither father nor son have denied the ownership of CARLOS HAKIM;"
- "CARLOS HAKIM is the bare owner for having delivered possession of the shares."

*See* Award, pgs. 6 and 9.

11.     The tribunal also found that Hakim was not liable for the alleged interference with the USG negotiations.  *See* Award, pg. 22 ("As a result of the absolute nullity declared ex oficio, all exceptions proposed against the main reformed lawsuit and those formulated against the counterclaim are rejected").

12.     Under Colombian law, the Award has the same weight and effect as a civil judgment.  *See* Barragán Aff. ¶ 6.

13.     Tawil filed a motion to vacate the Award to the Bogota Superior Tribunal, which is the equivalent of a Circuit Court of Appeals.  The Bogota Superior Tribunal dismissed the challenge on May 28, 2012.  *See* Bogota Superior Tribunal Ruling, attached as Exhibit "E."  By virtue of the dismissal, the judgment is final and no longer appealable.  *See* Barragán Aff. ¶ 6.

14.     Gyptec's failure to attach the Award as an exhibit to the Application, even though Gyptec references it several times, appears to be strategic, as the Award lays bare the misrepresentations and lies Gyptec used to bolster its Application, as described further in the Appendix hereto. .  (These are more particularly laid bare in paragraph 25 herein.)

15.     Not surprisingly and despite the tribunal's mandate that the shares be returned to Hakim, neither Tawil nor his father Dow turned over the shares to Hakim.  Rather, in an apparent ploy to avoid compliance with the Award, (the challenge to which was thereafter dismissed by the Colombian appellate court with no further right to challenge), Tawil and Dow advised that the shares were with a Panamanian company, Kistna – a company, again, owned by Dow.  *See* November 8, 2011 Correspondence from Tawil to Hakim, attached as Exhibit "F."  As such, Hakim was forced to commence an action in Panama (Exequatur) to domesticate the Award in Panama, so that the Award could be enforced against Kistna and the shares could be reclaimed by Hakim.

16.     Hakim commenced the action to enforce the Award on May 22, 2013.  *See* August 31, 2016 Ruling ("Panama Ruling"), pg. 1, attached as Exhibit "G."

17.     On August 31, 2016, the Panamanian Supreme Court granted recognition and enforcement of the arbitration judgment and deemed the judgment enforceable in Panama over Tawil's, Gyptec's, and Kistna's objections.  *See* Panama Ruling.  In its ruling, the Panama Supreme Court identified that "Carlos Hakim . . . [holds] an ownership interest of 33% of each [of the Panamanian companies]."  *Id.* pg. 1.

18.     Following the Panamanian ruling, it appears that Hakim is on the verge – after six years of litigation and Gyptec/Tawil playing cat and mouse with the shares – of recovering the shares in the Panamanian companies – which shares, again, evidence Hakim's one-third ownership interest in Gyptec.  Kistna's counsel has recently reached out to Hakim and indicated that Kistna is prepared to deliver the shares.  *Se*e September 23, 2016 Correspondence from Kistna, attached as Exhibit "H" ("Due to the [Panamanian Supreme Court's recognition of the arbitration award], . . . we have available the four (4) shares of Arkata Investment, Inc. and Ukiah International Corporation that the aforementioned Arbitration Award ordered to be returned, for the delivery of said shares to you personally").

19.     In 2014, after the arbitral panel issued the Award rejecting Tawil's and Gyptec's counterclaim of interference with negotiations with USG, Tawil and Gyptec commenced a civil lawsuit (*Responsibildad civil extra contractual*) against Hakkim alleging the same claims with respect to USG.  *See* Barragán Aff. ¶ 7.  Hakim has raised a *res judicata* defense to that claim.

## C. THE "COLOMBIAN CIVIL LITIGATION" ON WHICH GYPTEC BASES ITS APPLICATION AND HAS REPRESENTED IS AN ONGOING PROCEEDING HAS ACTUALLY CONCLUDED, AND TAWIL AND DOW WERE FOUND LIABLE FOR EMBEZZLEMENT

20.     The Colombian Civil Litigation before the *Superintendencia* (the "Colombian Civil Litigation"), on which this Court relied in granting Gyptec's Petition – is, as detailed below, not "ongoing."  *See* June 9, 2016 Ruling ("*Superintendencia* Ruling"), attached as Exhibit "I."  Hakim brought this litigation against Tawil and Dow (and other Gyptec officers and directors) for breach of fiduciary duty and embezzlement of corporate funds.  *Id.*  Gyptec intervened and accordingly was a party to the litigation as well.  *See* Barragán Aff. ¶ 8.

21.     Discovery was available to the parties, and Hakim abided by his discovery obligations as part of the *Superintendencia* proceedings.  *See* Barragán Aff. ¶ 10.  The Colombian Code of Civil Procedure – applicable in the proceeding – allowed a party to request production of documents (*exhibición de documentos*) from its opposing party, and a Colombian court will

order production of documents even if held abroad. *See* Barragán Aff. ¶ 14.  (Arts. 265-267 *Código General del Proceso*).  If a party fails to disclose documents, even if those are held abroad, the court will assume that the facts **sought to be** demonstrated through the production of documents are true. *See* Barragán Aff. ¶ 14.  (Art. 267 *Código General del Proceso*).

22.    On June 9, 2016 the *Superintendencia* issued a ruling finding that Tawil and Dow had breached their fiduciary duties and embezzled funds from Gyptec for their personal use: "Mr. Hakim Tawil performed operations with companies bound to him and received large amounts from Gyptec, S.A. by way of loans and advances, without having the general shareholders assembly's consent.   Therefore, it must be concluded that Mr. Hakim Tawil infringed the duty provided for numeral 7 of article 23 of Law 222/1995." *See Superintendencia* Ruling, pgs. 5-9 (indicating that Dow committed the same or similar embezzlement).

23.    Contrary to Gyptec's claims, Hakim's ownership interest in Gyptec played no role in the *Superintendencia*'s consideration of the merits of that lawsuit.  *See Superintendencia* Ruling, pg. 3.  Instead, Tawil raised Hakim's ownership interest to challenge Hakim's standing to bring the case, which standing argument the *Superintendencia* rejected.  *See Superintendencia* Ruling, pg. 3.  The *Superintendencia* found that "[t]he behavior of the defendants cannot be excused by arguing that Carlos Hakim Daccach never made contributions to the corporate funds of Gyptec, S.A. . . . . While Mr. Hakim Daccach has the condition of shareholder of Gyptec, S.A., he will have the rights inherent in that capacity." *See Superintendencia* Ruling, pg. 3.

24.    Hakim appealed the *Superintendencia* Ruling, asserting that the *Superintendencia* underestimated the amount of money that Tawil and Dow had embezzled and should be returned. *See* Barragán Aff. ¶ 11.   In response, Tawil filed a cross-appeal, which is permissible under Colombian law.  *See* Barragán Aff. ¶ 11. The Colombian appellate court, in considering Tawil's appeal, will be limited to the record below, and Tawil will be unable to submit any new evidence. *See* Barragán Aff. ¶ 11.

### D. THIS COURT RELIED ON GYPTEC'S MISTATEMENTS AND OMISSIONS IN GRANTING THE APPLICATION

25.    In granting the Application, this Court relied on Gyptec's blatantly false statements that Hakim's ownership and potential liability for interference with a USG deal were open, undecided issues.  *See* [D.E. #8, pg. 2] ("Gyptec seeks . . .  discover[y] . . . in order to dispute Hakim-Daccach's claims [of ownership]" and "should [Hakim's] claims of ownership be

false[,] to support its allegations that Hakim-Daccach interfered with an attempted merger between Gyptec and USG"). These misrepresentations (and others) and the effect they had on the Court's analysis are detailed below:[3]

| MISREPRESENTATION | COURT'S RELIANCE ON REPRESENTATION | TRUTH |
|---|---|---|
| The discovery is "for use in ongoing . . . proceeding in Colombia" before the *Superintendencia*. [D.E. #6, pg. 1] | The discovery is "for use in an ongoing Colombian proceeding." [D.E. #8, pg. 1]. | This is false. The proceeding before the *Superintendencia* is not ongoing. It concluded on June 9, 2016 when the *Superintendencia* issued its ruling. Further, Tawil is not permitted to introduce new evidence before the appellate court. |
| "Central to the Colombian Civil Litigation is the question of whether Mr. Hakim actually owns one-third of Gyptec." [D.E. #6, pg. 3]. This is the "the dispositive issue in the Colombian Civil Litigation." *Id.* at 14. | "the Colombian tribunal has already indicated the evidence is relevant to the key issue in those proceedings." [D.E. #8, pg. 6]. | This is false. This issue has already been determined by two courts in Colombia and the Supreme Court of Panama, and is otherwise no longer an issue in dispute. Further, the *Superintendencia* actually issued its ruling without the need to address this matter. |
| "Mr. Hakim . . . never owned . . . the Panamanian Companies' bearer shares." [D.E. #6, pg. 13]. | The Court indicates at several points that Hakim's ownership is an open issue. *See, e.g.,* [D.E. #8, pg. 1]("[t]he underlying matters related to Hakim-Daccach's **claim** of ownership")(emphasis added). | This is directly contrary to the Award (and the subsequent dismissal of the motion to vacate the award) in which the tribunal found Hakim is the owner of the shares and directed that the shares be returned to Hakim. |
| "Dr. Alejandro Hakim-Dow bears all the shares —and is thus the owner—of the Panamanian Companies." [D.E. #6, pg. 6]. | "Since 2005, two Panamanian Companies owned by Dr. Alejandro Hakim-Dow hold 99% of Gyptec, and the remaining shares are held by Dr. Alejandro's two sons and Hakim-Daccach." [D.E. #8, pg. 2]. | This is false. In the Award, the tribunal noted that Dow acknowledged that he received Hakim's shares as guarantee and that he was not the owner. Further, following the award and its recognition and enforcement by the Supreme Court of Panama, Kistna (Dow's company) has agreed to deliver the shares to Hakim. Thus, Dow will soon not be a |

---

[3] There also exist misrepresentations regarding Colombian law, which Hakim addresses below.

| | | holder of the shares, for which he was never the owner. |
|---|---|---|
| "Contrary to Mr. Hakim's claims, however, Gyptec's shareholder records indicate that Mr. Hakim currently owns only 10 out of 530,987 shares … of the company." [D.E. #6, pg. 1]. | "Since 2005, two Panamanian Companies owned by Dr. Alejandro Hakim-Dow hold 99% of Gyptec, and the remaining shares are held by Dr. Alejandro's two sons and Hakim-Daccach." [D.E. #8, pg. 2]. | This statement is misleading because Hakim has not claimed that he owns one-third of Gyptec's shares directly. He has always stated that he owns one-third of Arkata and Ukiah, the Panamanian Companies that own 99% of Gyptec. |

26.     These misrepresentations and failure to recognize Hakim's ownership not only compel denial of the Application, but also have exposed Tawil to criminal liability.[4] Tawil's misrepresentations are, unfortunately consistent with Tawil's otherwise bad behavior in relation to the dispute between Hakim, Tawil and Gyptec.[5] Tawil's modus operandi in the face of multiple tribunal orders requiring turnover of the shares to Hakim has been to deny possession of the shares and to harass Hakim by attempting to re-litigate Hakim's established ownership in Gyptec through various Colombian proceedings – none of which have provided any favorable results for Tawil. The instant Application is just the latest example of Tawil's and Gyptec's abuse of process and attempt to harass Hakim.  This Application simply appears to be an attempt to further multiply the proceedings and unnecessarily open a United States front to a Colombian dispute.

## STANDARD OF REVIEW

This Court's review of the Application under § 1782 must proceed in two parts.  First, the Court must determine whether the applicant fulfilled four mandatory prerequisites:

(1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in proceeding in a foreign or international tribunal"; and (4) the person from whom the

---

[4] As a result of Tawil's refusal to turn over the shares, criminal proceedings have been instituted against him in Colombia.  The criminal court has already determined that there exists probable cause to pursue the criminal action against Tawil for not complying with the arbitration judgment's mandate requiring that the shares be returned and for abuse of trust as legal representative of Gyptec.  *See* August 28, 2015 Criminal Court Imputation, attached as Exhibit "J."  There is also a second criminal proceeding against Tawil for "false statement or wrong evidence" concerning certain corporate actions Tawil took vis-à-vis the Panamanian companies.

[5] Notably and ironically, Tawil initiated a criminal proceeding against Hakim in Colombia for fraud.  Unlike the criminal cases against Tawil (which were determined to be with merit), the criminal case against Hakim was dismissed.  *See* January 13, 2016 Dismissal Order, attached as Exhibit "K."

discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

28 U.S.C. § 1782; *In re Pott*, 2013 WL 3189262, at *2 (S.D. Fla. June 20, 2013).

Even if so, the Court then must consider the following discretionary factors outlined by the Supreme Court in the *Intel* matter before exercising its authority:

(1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal – court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof – gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is otherwise "unduly intrusive or burdensome."

*See Green Development Corporation, S.A. De. C.V. v. Zamora*, 2016 WL 2745844, at *8 (S.D. Fla. May 10, 2016) (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255 (2004)).

Notably, a court need not undertake a full § 1782 analysis where the Application was made in bad faith or appears to be for the purpose of harassment. *See Green Development Corporation, S.A. De C.V.*, 2016 WL 2745844, at *3. Under those circumstances, the § 1782 application should be denied in full. *Id.*

## **ARGUMENT**

## I. **THE ORDER SHOULD BE VACATED AND THE SUBPOENA QUASHED BECAUSE THE DISCOVERY SOUGHT IS NOT – AND CANNOT – BE FOR USE IN A PROCEEDING BEFORE A FOREIGN TRIBUNAL[6]**

The Application fails to meet a critical prerequisite of § 1782: that the discovery is for use in a foreign proceeding, either ongoing or contemplated. Where, as here, the foreign proceeding has already concluded, the § 1782 application should be denied. *See In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, 2015 WL 5824505, at *2 (S.D.N.Y. Oct. 6, 2015). ("A tribunal does not qualify if "the merits of a controversy have already been decided by the foreign tribunal."). Neither the Colombian Civil Litigation nor the

---

[6] Gyptec submits that the Court does not need to engage in a § 1782 factor-by-factor analysis. As detailed in Section III, *infra*, the Court is well within its discretion to deny the Application outright based on the numerous misstatements Gyptec made in its Application and the obvious fact that the Application constitutes nothing more than a further attempt at harassment and an improper fishing expedition.

{00214641.DOCX }

contemplated proceedings meet this requirement, as the former is over and Gyptec has demonstrated nothing more than a subjective intent possibly to institute further proceedings.

**A. *The Colombian Civil Litigation Does Not Qualify as the Necessary Foreign Proceeding Because it has Concluded and, In Any Event, the Amount of Hakim's Ownership Was not an Issue in the Litigation***

Gyptec's reliance on the Colombian Civil Litigation to satisfy the "foreign proceeding" requirement is unavailing because, as noted, this litigation has already concluded in Hakim's favor, and further discovery cannot be used on appeal.[7]   Further, the *Superintendencia* has already determined that the level of Hakim's ownership was unnecessary for it to address the merits of the action.   Therefore, contrary to the basis underlying Gyptec's Application (which representation the Court relied on), Hakim's ownership was not an issue - let alone dispositive - in the Colombian Civil litigation.

Perhaps realizing that an adverse judgment was imminent in the Colombian Civil Litigation, Gyptec indicated in the amended Posse declaration that Gyptec has certain appellate recourse.   Specifically, Posse, in his declaration, represented that Gyptec will be able to introduce additional evidence in the course of challenging a ruling.   [D.E. #6-18 ¶34].   This effort to salvage the Colombian Civil Litigation as a gateway to U.S. discovery is also unavailing and misleading.   Any discovery taken pursuant to the Application cannot be used in support of Tawil's cross-appeal, because the appellate court is limited to the record below.   Moreover, the *recurso de revision* that Posse references is very narrow in scope and does not allow for any review of the merits or a re-litigation of any substantive issues.[8]   For these reasons, Gyptec's

---

[7] The issuance of the ruling should have been disclosed in compliance with Gyptec's "continuing duty to inform the Court of any development which may conceivably affect the outcome of litigation."   *See Green Development Corporation*, 2016 WL 2745844 at *3 ("duty of candor to the Court '[is] that duty attendant to the attorney's role as an officer of the court with a continuing duty to inform the Court of any development which may conceivably affect the outcome of litigation. ... Thus, attorneys are expected to bring directly before the Court all those conditions and circumstances which are relevant in a given case'")(citations omitted). This was obviously not done.

[8] Under Colombian law, the *recurso de revision* may only be filed on the following grounds (Art. 355 *Código General del Proceso*):
    a.  Discovery of documents that would have changed the ruling and that were not submitted as evidence due to force majeure or an act of the opposing party.
    b.  A final criminal ruling stating that documents that were decisive for the court to reach its ruling are false.
    c.  A final criminal ruling stating that witnesses on whose testimony the court relied in its ruling committed perjury.
    d.  A final criminal ruling stating sentencing an expert witness for fraud in relation to expert evidence submitted in the proceeding.
    e.  A final criminal ruling stating that the ruling was procured by force or fraud.

{00214641.DOCX }

reliance on the Colombian Civil Litigation to satisfy its foreign proceeding requirement is without merit. *See, e.g.*, *In re Pott*, 2013 WL 3189262, at *3 (rejecting argument that third factor is satisfied because "a party may present new evidence in support of his claim all the way through to an appeal to the Argentine Supreme Court"); *In re Ishihara Chem. Co.*, 251 F.3d 120, 125–27 (2d Cir. 2001) (concluding that application seeking discovery assistance in connection with patent invalidity proceeding before Japanese Patent Office ("JPO") was moot because, among other things, there was evidently no method under Japanese law by which applicant on its own could use new evidence in foreign proceeding after JPO conducted evidentiary hearing), overruled on other grounds by *Intel*, 542 U.S. at 253–54, 259, 124 S.Ct. 2466; *In re Euromepa, S.A.*, 154 F.3d 24, 28–30 (2d Cir. 1998) (affirming district court's dismissal of § 1782 application as moot because, among other things, French Supreme Court refuses to hear and consider new evidence and French Supreme Court otherwise disposed of appeal).

### B.  The Contemplated Colombian Proceeding Does Not Qualify as a Necessary Foreign Proceeding Because it Cannot be Reasonably Contemplated

The other proffered foreign proceeding – a contemplated Colombian proceeding for fraud and tortious interference with USG and Knauf – also does not satisfy the foreign proceeding requirement.  The contemplated Colombian proceeding is not within reasonable contemplation for the following reasons: (a) the contemplated proceeding relates to issues already conclusively adjudicated; and (b) Gyptec has demonstrated nothing more than a subjective intent to institute such a proceeding.

### i.  Hakim's Ownership Interest in Gyptec and Any Claim of Interference with USG Have Been Conclusively Decided

Gyptec and Tawil were both parties in the Colombian Arbitration, which conclusively held that Hakim was the owner of a 33% interest in the Panamanian companies which, in turn, own Gyptec.  Tawil and Gyptec sought unsuccessfully to annul the award, which has now been recognized and enforced by the Supreme Court of Panama.  The issue of Hakim's ownership has

---

f.   If the parties procured the ruling through collusion.

g.   Improper service of process.

h.   That the ruling incurred in an error of procedure that gives rise to the annulment of the proceeding.

i.   The ruling is contrary to a previous ruling with effects of *res judicata* among the parties.

*See* Barragán Aff., ¶ 12.  None of the grounds for the *recurso de revision* may be invoked by Gyptec by relying on the evidence sought regarding Hakim's ownership.  The *Superintendencia*, as noted, ruled that the evidence sought by Gyptec—evidence related to Hakim's Gyptec ownership—was not necessary for it to issue its decision.  As such, evidence on this point is irrelevant to and cannot be used to support a challenge to the ruling.  *See* Barragán Aff., ¶ 12.

plainly been adjudicated, and any discovery on this issue should not be permitted here because these proceedings are over. *See In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, 2015 WL 5824505 at *2 (does not qualify as a foreign proceeding "where the merits of a controversy have already been decided by the foreign tribunal"); *see also In re Pott*, 2013 WL 3189262, at *3 (proceeding not within reasonable contemplation where applicant has lost on the relevant issue before multiple courts). Similarly, any contemplated proceeding relating to Hakim's alleged interference with business relations between Gyptec and USG have already been conclusively and finally decided by the Award because Tawil *already brought* this claim as a counterclaim before the arbitral tribunal – and it was rejected. Again, the merits of these supposedly contemplated proceedings already have been decided and accordingly fail to meet § 1782's requirements. *Id.*

Moreover, even if Gyptec's claim of interference with USG had not been adjudicated, the premise underlying the contemplated action – that Hakim "misrepresent[ed] his ownership interest in Gyptec to USG" – has already been soundly rejected by the Colombian courts. *See* [D.E. #6, pg. 3-4]("if Mr. Hakim's ownership claims are false" Gyptec can pursue the contemplated proceeding for fraud and tortious interference). Given that the necessary assumption underlying the contemplated action has already been conclusively decided against Gyptec, the "reasonable" requirement within the term "reasonable contemplation" is not satisfied. For these reasons, Gyptec also fails to meet the "reasonable contemplation" requirement for its contemplated proceeding regarding USG.

### ii. Gyptec has No More than a Subjective Intent to Bring Proceedings with Respect to Knauf, and, Further, the Colombian Civil Litigation Extinguishes Those Claims

Gyptec has demonstrated nothing more than a subjective intent to institute a proceeding with respect to Gyptec's contemplated claim for "interfering with Gyptec's relationship with Knauf through [Hakim's] false claims in the Colombian Civil Litigation." [D.E. #6, pg. 4].

The contemplated proceeding regarding Knauf does not qualify because Gyptec has, at best, proffered only a subjective intent to bring litigation, which it has not acted on in **two years**. *Id.* at 123 ("[A] district court must insist on reliable indications of the likelihood that proceedings will be instituted **within a reasonable time**."). As such, to assert that such an action is contemplated multiple years after the events in question is disingenuous at best. *See KPMG, L.L.P.*, 798 F.3d at 124 ("At a minimum, a § 1782 applicant must present to the district court

13

some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye").

Bolstering this conclusion is that Tawil and Gyptec have already instituted an action against Hakim alleging claims of tortious interference with USG in 2014, which Gyptec neither mentions nor relies upon in its Application.  Gyptec, in short, has provided no reliable indication that such proceeding will be filed.  *See KPMG, LLP*, 798 F.3d at 123 ("[To] be within reasonable contemplation . . . the applicant must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated.").

Moreover, the basis for any contemplated proceeding based on interference with the Knauf transaction is eviscerated by the conclusive findings of the *Superintendencia*.  Gyptec's Application alleges that the Colombian Civil Litigation resulted in Gyptec's inability to access the funds from the Gyptec sale to Knauf.  The implication being that the Colombian Civil Litigation had no basis or was otherwise wrongful.  However, as noted previously, the *Superintendencia* issued a ruling in Hakim's favor on June 9, 2016.  Accordingly, any basis to bring such a claim in Colombia would be undermined by the *Superintendencia*'s finding that Tawil and his father Dow in fact had embezzled funds from Gyptec.  For these reasons, the Application plainly fails to meet the "reasonable contemplation" requirement for its contemplated proceeding regarding Knauf.[9]

## II.  EVEN IF GYPTEC COULD SATISFY THE § 1782 MANDATORY FACTORS, THE *INTEL* DISCRETIONARY FACTORS WEIGH STRONGLY AGAINST GRANTING § 1782 ASSISTANCE[10]

### A. The First Factor – that Hakim is a Party to the Foreign Proceedings – Dictates in Favor of Denial of the Application

The first discretionary factor is whether "the person from whom discovery is sought is a participant in the foreign proceeding."  *See Green Development Corporation, S.A. De C.V.*, 2016

---

[9] To the extent the contemplated action involves claims relative to Gyptec's inability to receive and use funds resulting from the sale to Knauf, the premise underlying that claim is also that Hakim's ownership claims are false. *See* [D.E. #8, pg 2]("Gyptec alleges . . . monetary harm . . . including an inability to receive and use funds resulting from a sale of assets to Knauf . . . Gyptec asserts that it intends to use the sought after discovery in contemplated claims against Hakim-Daccach **should his claims of ownership be false**")(emphasis added).  Again, given that Hakim's ownership claims have been adjudicated to be valid, any such claim relating to Knauf is not within reasonable contemplation.

[10] Gyptec reiterates that a § 1782 factor-by-factor analysis is not even required for the reasons stated in Section III, *infra*.

{00214641.DOCX }

WL 2745844 at *8.  This factor is important because, if the person from whom the discovery is sought is party to the proceeding, then the application should be denied because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."  *See Intel*, 542 U.S. at 264 ("when the person from whom discovery is sought is a participant in the foreign proceeding (as Intel is here), the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."); *Green Development Corporation, S.A. De C.V.*, 2016 WL 2745844 at *8 (same).

Another Circuit, in considering this factor, suggested that if the dispute between the parties is centered in a foreign country than the foreign court should be the court to address discovery requests.  *See Kestrel Coal Pty. Ltd. v. Joy Global, Inc.*, 362 F.3d 401, 406 (7th Cir.2004).  In *Kestral*, the Seventh Circuit approached the § 1782 analysis from a practical perspective, holding that it makes sense for the discovery request to be propounded to the court actually handling the case:

> Only if it turns out that the documents are relevant to the Australian suit, and difficult or impossible to obtain through that court's processes, would it make sense to launch an ancillary proceeding in the United States. Although air transportation, the Internet, and even fax machines have shrunk the globe, it remains best to conduct an Australian suit in Brisbane rather than in Milwaukee, which is 8,915 miles away.  Until [the Australian court] encounters a problem that proves difficult to handle under Australian rules (and the geographical reach of the Queensland court's process), the dispute should remain a subject for adjudication in Brisbane.  Proceedings in Milwaukee are premature, and we hope that they are avoidable in the long run.

*Id*.  Since Hakim was a party to the Colombian Civil Litigation (in which Hakim claimed breach of fiduciary and in which an adverse ruling to Tawil was rendered) and would be a party to the contemplated Colombian proceeding, this factor clearly dictates against granting the Application.

Realizing that this factor weighs heavily against it, Gyptec falsely attempts to nullify the factor – asserting that the Colombian courts would be unable to obtain the documents from Hakim, as the documents are outside of Colombia.  This assertion, which the Court relied upon in granting the Application, is inaccurate.  *See* [D.E. #8, pgs. 5-6] ("Gyptec addresses this concern within its Application and argues that under Colombian law, a Colombian court has no jurisdiction to obtain documents and files, including emails that are located outside of Columbia. ECF No. [6] at 2. Hence, the Applicant has no access to the information without the intervention of this Court").  To support its assertion, Gyptec relies on the Posse declaration.  Posse asserts

that "if [a] person resides abroad, such as Mr. Hakim, a Colombian court cannot directly conduct an inspection of the person's offices or residence in a foreign country."  *See* [D.E. #6-18, ¶31]. This statement is incomplete.  Posse fails to inform the Court that Colombian Civil Procedure allows a party to request production of documents (*exhibición de documentos*) from its opposing party and a Colombian court will order production of documents even if held abroad *(Arts. 265-267 Código General del Proceso)*.  *See* Barragán Aff., ¶ 14.  If a party fails to disclose documents, even if the documents are held abroad, the court will assume that the facts that were to be demonstrated through the production of documents are true (*Art. 267 Código General del Proceso*).

Since Hakim was a party to the prior proceeding and would be a party to the phantom two-year-in waiting "contemplated" proceeding, the Colombian courts have full authority and power to order Hakim to produce documents, even if kept abroad.   Moreover, Hakim has fully participated in the various Colombian proceedings that have stemmed from this dispute, including attending hearings, interrogations and producing documents ordered to be produced. Further, Hakim represents to this Court, by virtue of the verification of this Motion, that he will produce all documents ordered to be produced by a Colombian court (to the extent a court so requires him to do so) should there be an actual future proceeding.  *See In Matter of Application of Leret*, 51 F. Supp. 3d 66, 70 (D.D.C. 2014) (denying application because the party from whom discovery was sought "offer[ed] to submit to [applicants'] discovery requests in Venezuela").[11] As such, even if the Colombian court did not have the power to force Hakim to turn over documents kept abroad, Hakim's past conduct and his concession to produce documents ordered to be produced should a further action so dictate, requires that the Order granting the Application be vacated so that Colombian courts may handle any discovery issues in this purely Colombian dispute between these parties.

### B. The Subpoena Should be Quashed Because the Foreign Proceedings have Concluded and the Subpoena Seeks to Circumvent those Proceedings

The second and third discretionary factors under *Intel* permit courts to take into account "the character of the proceedings underway abroad, . . . [and] the receptivity of the foreign tribunal" to § 1782 discovery, and whether "the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions."  *In re: Clerici*, 4481 F.3d 1324, 1334 (11th Cir.

---

[11] If the contemplated action is indeed ever filed and if there exists any issues obtaining discovery from Hakim (which will not happen), Gyptec can simply file a renewed application.

2007).   These factors also weigh heavily in favor of quashing the discovery because, as explained in detail above, the foreign proceedings conclusively resolved the issues on which Gyptec now seeks discovery, and Gyptec is seeking to use discovery in the United States as a means to circumvent the finality of the foreign proceedings and relitigate such issues.

As part of the second discretionary factor, "courts analyze how far along the foreign suit is in the discovery process" and where the foreign proceedings have concluded.   This factor weighs against § 1782 assistance.   *See HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211 (D.D.C. 2015); *In re Application of Caratube Int'il Oil Co. LLP,* 730 F. Supp. 2d (D.D.C. 2010) (denying discovery where foreign proceeding was about to reach the close of discovery).   And, when discovery has yet to begin, courts also recognize that discovery may be inappropriate.   *See id.* (because the foreign litigation may not have reached "the stage in which discovery would be appropriate" and thus the Court is wary that Petitioner "may be using the United States statutes and federal court system to 'jump the gun' on discovery in the underlying foreign suit"). Discovery in the Colombian Civil Litigation has concluded, as the *Superintendencia* proceedings have ended and the case is at the appellate level, and any potential contemplated proceedings have yet to begin.

Gyptec's Application is no more than a bald attempt to circumvent the multiple rulings against Tawil and Gyptec in foreign proceedings by opening a new front to this litigation. Gyptec's attempts to raise these issues again constitutes an improper use of § 1782, seeking to circumvent those prior proceedings.

Moreover, where the locus of the dispute is in a foreign country, courts should be wary of attempts to seek discovery in the United States as such attempts may constitute "forum shopping under the guise of § 1782."   *See In re Kreke Immobilien KG,* 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013) ("In light of the overwhelmingly German character of Kreke's discovery application, we are loath to sanction forum shopping under the guise of § 1782").   The *In re Kreke Immobilien KG* court found:

> this is a case where a German petitioner is seeking discovery from a German respondent for use against a German defendant in a German proceeding.  Because the locus of this action is so clearly in Germany and there is no suggestion that any documents sought are outside the jurisdictional reach of the German courts, this Court is concerned that Kreke's application is an attempt to circumvent foreign discovery procedures.

17

*Id.* at *6.

Here, the Colombian Civil Litigation has concluded and therefore discovery, at Gyptec's or Tawil's request, can no longer be used in that proceeding. *See* Barragán Aff., ¶ 11. Discovery should also not be available for the contemplated proceedings, as no such proceedings have been commenced and are unlikely to be commenced. For these reasons, the second and third discretionary factors likewise weigh against granting the Application.

### C. *The Fourth Factor Also Requires that the Order Granting the Application be Vacated Because the Discovery is Duplicative*

The fourth discretionary *Intel* factor also weighs in favor of vacating the Order granting the Application because the requested discovery is "unduly intrusive or burdensome" by virtue of being equally available in Colombia and cumulative of discovery already conducted. In addition to the reasons already stated – the ownership and interference issues have already been decided in Hakim's favor without any existing right of appeal and thus the effort for discovery relative to these issues is nothing more than harassment and otherwise irrelevant – the discovery is also unduly burdensome because the information sought is equally available in the foreign tribunal. *See In re PIC Do Nordeste, LTDA*, No. 12–50624, 2012 WL 4448886, *8 (E.D.Mich. Sep.25, 2012)(if "discovery were equally available in both foreign and domestic jurisdictions, a district court might rely on this evidence to conclude that the § 1782 application was duplicative") (internal quotations and citations omitted).

Further, the requested discovery is cumulative of the discovery that has already occurred in the multiple Colombian litigation that have sprung from this dispute. *See Intel*, 542 U.S. at 265 ("[R]equests that are "[duplicative,] unduly intrusive or burdensome . . . may be rejected or trimmed."). For these reasons, the fourth factor weighs in favor of vacating the Order granting the Application.

## III. THE SUBPOENAS SHOULD BE QUASHED BECAUSE THE APPLICATION WAS MADE IN BAD FAITH AND IS PREMISED ON MISSTATEMENTS

"[T]he Eleventh Circuit instructs that a district court should deny an Application under Section 1782 if it is 'made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials . . . in toto, just as it can if discovery was sought in bad faith in domestic litigation.'" *Green Development Corporation, S.A. De C.V.*, 2016 WL 2745844 at *3. The court can also deny the application if it constitutes "a fishing expedition." *See In re Kivisto*,

521 Fed. Appx. 886, 888 (11th Cir. 2013).  Both these factors mandate that the Court vacate the Order granting the Application without the necessity of a full § 1782 analysis.

**A.  Gyptec's Egregious Misrepresentations and Failure to Correct Other Representations Post-Filing Dictate Denial of the Application or at Least Should be Considered in the Court's Analysis of the Discretionary Factors**

The above noted facts reveal that Gyptec made certain misrepresentations and omissions in support of its Application, which in turn formed the basis of this Court's Order granting the Application.  These misrepresentations and omissions were made by:

(a) Stating that Dow owns the Panamanian companies;

(b) Failing to reveal that multiple courts have already determined that Hakim is a one-third owner of the Panamanian companies; and

(c) Failing to identify that the purported contemplated claim for interference has been adjudicated.

Gyptec, similarly, failed to advise the Court that, within weeks of Gyptec submitting its Application and approximately two months before the Court granted the Application, a ruling was entered in the Colombian Civil litigation – in which the *Superintendencia* held, among other things, that the level of Hakim's ownership was a non-issue.

This development, again, should have been disclosed because it eviscerated two principal points on which Gyptec relied to support its Application: (a) that it met the "existence of foreign proceeding" requirement by virtue of, in large part, the pendency of the Colombian Civil Litigation and (b) that the degree of Hakim's ownership was a dispositive point in the Colombian Civil Litigation.  *See Green Development Corporation*, 2016 WL 2745844 at *3.  For these reasons, the Court should consider granting this motion and vacating its Order on this basis alone, or, at a minimum, taking into account these misrepresentations and omissions when exercising its discretion under the § 1782 factors.  *See Green Development Corporation, S.A. De C.V.*, 2016 WL 2745844 at *7 ("Although the Undersigned is not affirmatively finding that Green Development acted in bad faith, I am likewise not specifically finding that it acted in good faith, either. Instead, I view the failures to disclose as strategic . . . and a factor to be considered in the discretionary assessment of the *Intel* factors").

**B.  Gyptec's Requested Discovery Constitutes Harassment, is Irrelevant and Otherwise Constitutes a Fishing Expedition**

The Subpoena also should be quashed, without the need to undertake a complete § 1782 analysis, because the requested discovery constitutes harassment and is otherwise a fishing

expedition.  As explained above, the Application seeks to develop information to support Gyptec arguments that already have been rejected.

If anything, the request constitutes a fishing expedition in the hopes of developing facts to mount an improper collateral attack of the Award.  *See Schoenman v. FBI*, 763 F. Supp. 2d 173, 204 (D.D.C. 2011) ("[T]here is simply no basis for conducting discovery on an issue already decided by the Court.").  The Application is nothing more than a tool for harassing Hakim and otherwise seeking improperly to open up a United States front to the litigation and propound discovery requests to support a position already addressed by the Colombian courts or, at a minimum, should be handled by the Colombian courts.  *See In re PIC Do Nordeste, LTDA*, 2012 WL 4448886, *8 ("district courts must be alert for potential abuses that would warrant a denial of an application to be allowed to take such discovery. One abuse would be for a party to seek discovery in a federal district court that it could obtain in the foreign jurisdiction, thus gratuitously forcing his opponent to proceed in two separate court systems").  For these reasons, the Court should vacate its Order granting the Application outright without further examination.

## CONCLUSION

As detailed above, the Order granting the Application must be vacated given that the Application fails to meet the requirements of § 1782, and the *Intel* factors weigh strongly against permitting the use of § 1782 here.  Moreover, the Order was premised on multiple misrepresentations of fact and law posited by Gyptec, and for that reason alone should be vacated.  For all of these reasons, the Order granting the Application must be vacated and the Subpoena quashed.

## CERTIFICATE OF COUNSEL

Pursuant to Local Rule 7.1(a)(3), undersigned counsel contacted counsel for Gyptec who objected to the relief requested in this Motion.

**WHEREFORE**, Carlos Hakim-Daccach requests that the Court (a) quash the Subpoena (b) vacate the Order granting Gyptec's Application under § 1782; and (c) grant such other and further relief which the Court deems appropriate.

Respectfully submitted this 31st day of October 2016.

20

HELLER WALDMAN P.L.
3250 Mary Street, Suite 102
Coconut Grove, Florida 33133
Telephone No:  (305) 448-4144
Facsimile:  (305) 448-4155

By:     /s/ Glen H. Waldman
        Glen H. Waldman, Esq.
        Fla. Bar No. 618624
        Michael A. Sayre, Esq.
        Fla. Bar. No. 17607

## VERIFICATION

Under penalty of perjury, the undersigned, Carlos Hakim-Daccach declares that he has

read the foregoing Motion and that the facts set forth herein are true and correct to the best of his

knowledge and belief.

By:

By: _____
        CARLOS HAKIM-DACCACH

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 31, 2016, I electronically filed the foregoing with

the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing

to all parties of record.

         /s/ Glen H. Waldman
            Glen H. Waldman

21