**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 16-20810-CIV-WILLIAMS/SIMONTON**

GYPTEC, S.A.,

     **Applicant,**

**v.**

CARLOS HAKIM-DACCACH,

     **Respondent.**

_____/

## ORDER ON GYPTEC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM CARLOS HAKIM-DACCACH AND FOR AN ADDITIONAL DAY OF DEPOSITION

     This matter is before the Court upon Applicant Gyptec, S.A.'s Motion to Compel Production of Documents from Carlos Hakim-Daccach and for Additional Day of Deposition, ECF No. [82]. The Respondent Carlos Hakim-Daccach has filed an Opposition to the Motion to Compel, ECF No [86], and Gyptec, S.A., has filed a Reply, ECF No. [92]. For the following reasons, the Motion to Compel is granted, in part, and denied, in part.

     **I.**    **BACKGROUND**[1]

     On March 4, 2016, Gyptec, S.A. ("Gyptec") petitioned this Court pursuant to 28 U.S.C. § 1782, for an Order to permit discovery of information from Carlos Hakim-Daccach ("Hakim" or "Respondent"), a Florida resident, for use in what Gyptec described as an ongoing Colombian proceeding, (the "Colombian Litigation"), ECF No. [1]. Gyptec contended that the underlying foreign matters relate to Hakim's claim of ownership over Gyptec, a Latin American corporation, ECF No. [6] at 2. According to the

---

[1] The lengthy and complex dealings and litigation between Gyptec and Hakim have been recounted in various filings in the record, and thus are not included herein other than necessary to resolve Gyptec's Motion to Compel.

Application, Gyptec was established in 2004 by Hakim-Daccach's uncle, Alejandro

Hakim-Dow ("Dow") and cousins Alejandro Hakim Tawil, deceased, and Jorge Hakim

Tawil ("Tawil"). Gyptec contends that since 2005, two Panamanian Companies owned by

Dow hold 99% of Gyptec, and the remaining shares are held by Dow's two sons and

Hakim, ECF No. [6] at 6.

Gyptec asserts that in March 2014, Respondent Hakim filed a derivative complaint

against Gyptec's directors and officers for allegedly breaching their fiduciary duties by

purportedly misappropriating funds. Relevant for the Motion at Bar, Hakim contends that

he owns one-third of Gyptec by virtue of investments allegedly made by his father in

2004 and 2005, ECF No. [6] at 1. Gyptec argued that in order to substantiate his claims of

ownership, Hakim relied upon copies of wire transfer records containing hand written

annotations by his father, which indicate an intended capital contribution to Gyptec, ECF

No. [6] at 3. Hence, Gyptec sought in its application to discover the original wire transfer

records, in addition to other related information, in order to dispute Hakim's claims.

Gyptec also asserted that it intended to use the sought-after discovery in

contemplated claims against Hakim-Daccach should his claims of ownership be false,

ECF No. [6] at 3. Gyptec claimed that it sought this Court's assistance to obtain evidence

to demonstrate Hakim-Daccach's efforts to interfere in Gyptec's business dealings. With

regard to the ongoing Colombian Litigation, Gyptec sought Hakim-Daccach's, (1)

communications and correspondence, including emails, discussing any investments,

capital contributions or loans to Gyptec or the Panamanian companies; and (2) financial

records, including wire transfers, reflecting investments, capital contributions or loans to

Gyptec, which it maintains is within his custody, possession or control. In addition,

Gyptec sought to depose Hakim-Daccach in Miami, Florida regarding the aforementioned

topics.

For the contemplated litigation, Gyptec sought (1) communications and correspondence, including emails, regarding Gyptec's proposed asset sales to USG or Knauf; (2) records, including calendars or agendas, reflecting meetings with or regarding USG and Knauf or their agents or representatives. Gyptec also requested to depose Hakim-Daccach for information related to those matters.

On August 26, 2016, this Court entered an Order granting Gyptec's Ex Parte Application for an Order under 28 U.S.C. § 1782, ECF No. [8]. In so doing, this Court authorized Gyptec to issue and serve a subpoena on Respondent Hakim. The Order stated that the discovery authorized by the Order was to be in accordance with the Federal Rules of Civil Procedure, ECF No. [8] at 7.

On October 31, 2016, Hakim filed a Verified Renewed Motion to Quash Subpoena and to Vacate the Court's Order Granting Gyptec's 28 U.S.C. § 1782 Application, ECF No. [18]. Ultimately, the undersigned denied Hakim's Motion to Quash and Vacate and issued an Omnibus Order again authorizing Gyptec to issue and serve a subpoena on Respondent Hakim for the documents specified in the proposed subpoena attached to the Application, as well as to depose Hakim, ECF No. [6-17]. Hakim filed objections to the Omnibus Order, and on October 19, 2017, the District Judge, after conducting a *de novo* review of that Order, affirmed the undersigned's rulings and directed Hakim to promptly respond to any subpoena authorized by the Omnibus Order, ECF No. [59].

Consistent with the Court's Orders, Gyptec issued a subpoena to Hakim that provided:

<u>**DOCUMENTS TO BE PRODUCED**</u>

This subpoena requires production of all documents that are responsive to the requests below and are in your possession, custody or control:

> 1.      All documents, communications and correspondence, including emails, financial records or wire transfers, discussing any investments in or capital contributions or

3

loans to Gyptec or the Panamanian Companies by You or any member of your Family;

**2.** **All documents, communications and correspondence, including emails, regarding Gyptec's actual or prospective sale or merger with USG or Knauf; and**

**3.** **All documents, communications and correspondence, including calendars or agendas referencing meetings with or regarding USG or Knauf, or their agents or representatives.**

### DEPOSITION

This subpoena also requires You to present Yourself for deposition at the time

and place specified. You must be prepared to provide deposition testimony regarding

the following topics:

**1.** **Any investments in or capital contributions or loans to Gyptec of the Panamanian Companies by You or any member of your Family, including the source of such investments; and**

**2.** **Communications or meetings between You or your representative and USG of Knauf, or their representatives, regarding Gyptec's actual or prospective sale or merger with USG or Knauf.**

ECF No. [6-17] at 9. The Definitions for the Subpoena provided, in relevant part,

**7. The "Panamanian Companies" means Ukiah International Corp. and Arkata Investment Inc.**
**. . .**

**11. "Investments" means any contribution, in any form, monetary or otherwise, including to purchase any type of equity in, provide a loan to or finance in any way, at any point in time, directly or indirectly, Gyptec and/or the Panamanian Companies.**

ECF No. [6-17] at 9, [82-2] at 10. After Hakim produced documents in response to the

subpoena, and he was deposed, Gyptec filed the instant Motion, seeking to have Hakim

produce additional documents in compliance with the Subpoena. In addition, Gyptec

requests to have Respondent Hakim appear for another deposition to answer questions

that his counsel instructed him not to answer at the first deposition, and to answer

questions regarding any newly produced documents that the Court orders Hakim to produce in granting Gyptec's Motion to Compel.

## II. THE POSITIONS OF THE PARTIES

In its Motion to Compel, Gyptec seeks to have Respondent Hakim compelled to produce documents responsive to the subpoena duces tecum that the Court approved in granting Gyptec's § 1782 Application. Gyptec contends that the documents sought in that subpoena "relate[ ] directly to Mr. Hakim's ownership claims over one-third of Gyptec and the Panamanian Companies" which Gyptec asserts is the "central issue in dispute", ECF No. [92] at 5. Gyptec asserts that, although Hakim produced a number of documents in response to the subpoena, there were entire categories of responsive documents that Hakim failed to produce prior to his deposition, ECF No. [82] at 7. Specifically, Gyptec identifies the following categories of documents as missing from the Respondent's production:

1. Documents Regarding Chester Mester and Serendipity;

2. Documents Regarding Trusts That Supposedly Own Chester Mester and Serendipity;

3. Documents Regarding a Letter of Credit for Gyptec;

4. Documents Regarding New Panamanian Proceedings;

5. Documents Regarding the Gil Affidavit;

6. Notes of a Meeting with USG.

ECF No. [82] at 7-8. In support of its Motion, Gyptec has submitted the Declaration of Daniel Posse-Velasquez, an attorney, who currently represents Gyptec, ECF No. [82-3]. According to Mr. Posse-Velasquez, he reviewed the documents produced by Hakim in response to Gyptec's subpoena on November 14, 2007 which consisted of 3,316 pages. He estimates that 99% of the documents produced had been previously produced in, or otherwise related to, other litigation in Colombia. In addition, he reviewed Respondent

Hakim's deposition testimony, and summarized portions of that testimony to establish the relevance of the documents that Gyptec now seeks to have produced.

In response, Hakim argues that Gyptec's Motion to Compel should be denied on a number of both procedural and substantive grounds. First, Hakim contends that the Court should summarily deny the Motion to Compel for failure to comply with the Local Rules because Gyptec failed to file the Motion within thirty (30) days of Dr. Hakim's deposition, ECF No. [86] at 6. Hakim next argues that the documents that Gyptec currently seeks fall outside of the narrow scope of discovery permitted by the Court when the initial subpoena was issued.

Hakim additionally contends that several things have changed since Gyptec first filed its Application that warrant the Court denying the Motion to Compel. Hakim stated there is now a related action pending in this district, in which Gyptec can obtain the discovery rather than through this § 1782 procedure. Hakim also contends that subsequent to the time that Gyptec's Application was initially filed, a final hearing was held in the foreign proceeding, which was the basis for satisfying the first factor in determining whether discovery should be permitted by a Court pursuant to 1782, and as such, this action is only now predicated on Gyptec's contemplated action which is not likely to commence within a reasonable time.

Hakim further argues that many of Gyptec's document requests are burdensome because they are extremely broad in scope and outweigh any purported need by Gyptec for the documents. Further, Hakim contends that he is not required to comply with Rule 26(g), which requires that an attorney certify discovery responses, because this is an ancillary proceeding where no trial will be held in this district. Finally, Hakim contends that his Counsel properly instructed him not to answer certain questions at his deposition, and that an additional day of him being deposed is unnecessary.

For the following reasons, the undersigned concludes that the bulk of the objections raised by Hakim are without merit, and Gyptec's Motion to Compel should be granted, in part.

### III.    LEGAL FRAMEWORK

"Once discovery is authorized under § 1782, the federal discovery rules, Fed. R. Civ. P. 26–36, contain the relevant practices and procedures for the taking of testimony and the production of documents." *Weber v. Finker*, 554 F.3d 1379, 1384-85 (11th Cir. 2009) (citing *In re Clerici*, 481 F.3d 1324, 1336 (11th Cir. 2007)). Section 1782 does not require that every document discovered be actually used in the foreign proceeding. *Id.* at 1385. Rather, section 1782 expressly provides that the district court should grant discovery under the Federal Rules of Civil Procedure. *Id.*

Further, Rule 45 generally governs discovery upon non-parties by subpoena. Fed. R. Civ. P. 45. The permissible scope of a subpoena is congruent with the scope permitted for other discovery devices under the discovery rules. *See, e.g., Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc.*, 216 F.R.D. 533, 535 (M.D. Fla. 2003). A court must examine a request contained in a subpoena duces tecum under the same standards set forth in Rule 26(b). The scope of a subpoena therefore is governed by Federal Rule of Civil Procedure 26 which provides that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...." Fed. R. Civ. P. 26(b)(1).

### IV.    ANALYSIS

#### A.    *General Objections*

##### 1.    Timeliness of Gyptec's Motion to Compel

Respondent Hakim first argues that Gyptec's Motion to Compel should be denied because it is untimely. On this point, Respondent argues that although Hakim was deposed on November 20, 2017, and the discovery disputes were known by that date,

Gyptec waited until January 31, 2018 to file its Motion to Compel in violation of Local Rule 26.1(g), which requires that such disputes be presented to the Court within thirty days from the date of the deposition.

In Response, Gyptec contends that it was not until January 16, 2018 that Respondent Hakim confirmed to Gyptec that he refused to produce any additional documents, issue a Rule 26 Certification and sit for an additional day of deposition, ECF No. [92] at 9.[2]  Gyptec thus contends that its Motion to Compel was timely filed approximately fifteen days later.  Gyptec further argues that even if the Motion to Compel was untimely, the Court may still exercise its discretion to consider the dispute, particularly here, where there is no trial deadline and the parties' delay was due, in part, to the efforts by the Parties to resolve the discovery dispute.

Based upon Gyptec's representations that the Parties attempted to resolve the disputed issues for several weeks, and that upon a final indication from the Respondent that no additional documents would be produced, and Hakim would not sit for another deposition Gyptec timely filed the instant Motion, the undersigned concludes that Gyptec has provided good cause for not filing the Motion earlier.  Further, even if the Motion is considered to be untimely, the undersigned exercises her discretion and concludes that under the facts of this case, the Motion to Compel should be entertained by the Court, where the delay does not prejudice Hakim in any way.

### 2.    Other Litigation Pending in this District

Respondent asserts that there is another action currently pending in this district between Hakim and Gyptec that will adjudicate Hakim's ownership of Gyptec and thus argues that Gyptec now has the ability to pursue the very discovery it seeks here through that litigation.  Respondent contends that the Court should deny the Motion to

---

[2] Gyptec has submitted email exchanges between Counsel that reflect the on-going efforts to resolve the disputed issues prior to filing the instant Motion to Compel, ECF Nos. [82-4] [82-6] [82-8].

Compel in deference to that other litigation, ECF No. [86] at 11. In reply, Gyptec contends that the discovery it seeks is for use in the foreign proceedings, not the proceeding here, and, the discovery obtained in the other action pending in the U.S. litigation might be subject to a protective order that would preclude the use of those materials in the foreign action, ECF No. [92] at 11. Gyptec further contends that there is nothing that precludes a party in a § 1782 action from obtaining discovery because of another action pending in the United States with related facts. Finally, Gyptec contends that the related action differs significantly from the § 1782 action, because that action pertains to funds held in an account in Miami related to the sale of Gyptec's assets to Knauf.

The undersigned concludes that the Respondent's contention on this issue is without merit. First, the action to which the Respondent refers has recently been remanded to state court for lack of diversity jurisdiction. See *Carlos Hakim-Daccach v. Gyptec S.A.*, Case No. 17-cv-20495-Scola/Otazo-Reyes, ECF No. [148], *Order Remanding Case to State Court*, (Sept. 13, 2018). Second, as Gyptec correctly notes, there is nothing in § 1782 that states that a related action pending in another court in this country precludes a court from permitting discovery to proceed related to a proceeding in a foreign tribunal made by an interested person. Finally, the subpoena in this action has already issued, and Gyptec seeks compliance with that subpoena, and thus at this point, even if permissible, it would not be more efficient or expeditious to truncate the instant action in favor of Gyptec seeking discovery in that later-filed action, particularly where the issues in that action are not the exact same as those for which Gyptec seeks discovery in the foreign tribunal.

### 3. Resolution of Colombian Civil Action

Respondent Hakim asserts that Gyptec's Motion to Compel should be denied because the Colombian Civil Litigation, which was one of the bases upon which Gyptec's § 1782 Application was initially granted, is no longer pending, ECF No. [856] at 12-13.

Respondent contends that the other basis, Gyptec's contemplated action against Dr. Hakim, has not been commenced in the two years that this action has been pending, and is likely a fiction. Respondent further argues that even if Gyptec was actually contemplating litigation, the discovery it has already received has provided more than enough information to determine whether to pursue the contemplated action.

In Reply, Gyptec states that the Colombian Civil Litigation is far from over, as Gyptec intends to seek an appellate review of a decision from a Colombian trial court which included a finding that in order to receive an award of damages from two Gyptec directors, Hakim must prove ownership through further litigation, ECF No. [92] at 6. Gyptec further asserts that there is an ongoing tortious interference claim between Gyptec and Hakim. In addition, Gyptec maintains that it "intends to use evidence obtained through this Section 1782 proceeding in litigation against Hakim for interfering with Gyptec's 2015 sale of assets to subsidiaries of Knauf International GmbH., ECF No. [92] at 6. Gyptec further states that it will sue Hakim for fraud should the evidence obtained in this proceeding reveal that Hakim's ownership claims of one-third of Gyptec are false.

The undersigned concludes that they discovery sought in this § 1782 claim is still appropriate. First, Gyptec disputes Hakim's contention that the foreign litigation has been resolved, and contends that there is an ongoing tortious interference claim against Hakim. Further, based upon the representations by Gyptec that it intends to use the discovery obtained in this proceeding for future litigation in a foreign proceeding, the Court concludes that the discovery sought herein pursuant to § 1782 is still being sought for contemplated foreign litigation, and thus Gyptec still is in need of the discovery sought. Finally, the Court notes that Hakim has only filed an opposition to Gyptec's Motion to Compel, which pertains to a subpoena that was already issued. Hakim has not sought to quash that subpoena based on the new developments that he points to, and

has not otherwise sought to be relieved from his obligation to respond to the validly issued subpoena. Accordingly, Hakim's contention on this point is without merit.

### 4. Expansion of Discovery Requests In Subpoena

Throughout its response to the Motion, Hakim contends that the scope of the original subpoena that was approved by the Court was very narrowly tailored to documents and a deposition related to the foreign proceeding, which primarily related to information about Hakim's capital contributions to Gyptec, ECF No. [86] at 2-3. Hakim argues that Gyptec, through the Motion to Compel, now seeks to improperly expand the scope of that subpoena by obtaining far reaching documents, including those that will divulge Hakim's litigation strategy. Hakim further argues that the requested documents are not proportional to Gyptec's needs to determine whether Gyptec should institute an action for fraud against Hakim, and contends that Gyptec is simply engaged in fishing expedition to harass Hakim.

In Reply, Gyptec states that it sought a narrow set of documents from Hakim discussing his investments and loans or capital contributions to Gyptec or to Ukiah International Corp. and Arktata Investment, Inc., ECF No. [92] at 4. Gyptec asserts that the category of documents that it seeks to compel go directly to establishing Hakim's ownership in Gyptec, by seeking documents that demonstrate whether Hakim owns or controls Chester Mester or Serendipity of their trusts, seeks documents regarding loans provided by Hakim or his family to Gyptec, seeks Hakim's latest proceedings in Panama asserting his claims of ownership over one-third of Panamanian Companies, and seeks documents related to an affidavit that analyzes Hakim's ownership claims.

Before reaching the disputes regarding the particular documents sought by Gyptec, the undersigned observes generally that the subpoena approved by this Court and issued by Gyptec sought the production of documents that relate to the Respondent's claims that he is a one-third owner of Gyptec based upon financial

transactions made by two companies either to or for the benefit of Gyptec. Because Gyptec denies that such transactions occurred, and/or denies that such transactions were made for the benefit of Gyptec or by the Respondent, any documents establishing that those transactions occurred and the ownership of the entities that engaged in those transactions, are within the scope of the subpoena, even if the name "Gyptec" does not appear in the documents.[3] Accordingly, the undersigned makes a blanket ruling that the Respondent must produce documents in response to Gyptec's subpoena to the extent that those documents evidence the occurrence of the disputed transactions and the owners, beneficial or otherwise, of the entities involved in those transactions.

Moreover, as stated above, discovery under § 1782 is subject to the federal discovery rules and does not require that every document discovered be actually used in the foreign proceeding. Thus, despite Hakim's arguments, the undersigned has the discretion to permit discovery regarding matters relevant to any party's claim or defense and proportional to the needs of the case. Nonetheless, the undersigned is cognizant of the impropriety of permitting overly broad discovery that may not be proportional to the needs of the case. The undersigned has therefore carefully reviewed the record, including the deposition of Respondent Carlos Hakim-Daccach in determining the scope of the documents to be produced, and where appropriate has denied Gyptec's request to obtain documents that are not sufficiently tailored to the subpoena approved by the Court. Accordingly, the undersigned will evaluate each set of requested documents to ascertain whether such documents should be produced by Hakim, in turn.

---

[3] It is for this reason that Hakim's contention that the subpoena is limited to documents "discussing" any investments is not of significant import because the subpoena necessarily is limited to the production documents demonstrating any relevant financial transactions, even if the word "Gyptec" is not included.

B. *Specific Documents Gyptec Seeks to Have Produced*

As set forth above, Gyptec identifies the following categories of documents as missing from the Defendant's production:

1. *Documents Regarding Chester Mester and Serendipity*

Gyptec describes these particular documents as relating to two entities that Respondent Hakim contends that his father wired approximately $1 million from in 2004 and 2005 to a company unrelated to Gyptec, ECF No. [82] at 7. Specifically, Gyptec contends that Defendant Hakim maintains that he made capital contributions to Gyptec and two Panamanian Corporations (Arkata Investments Inc., and Ukiah International Corp.) through two offshore entities, Chester Mester Holdings, Ltd., and Serendipity International Holdings, Inc., in 2004 and 2005, ECF No. [82-3]. Gyptec seeks production of all documents and communications concerning:

> (1) the shareholders and directors of Chester Mester and Serendipity from 2004 to date, including shareholder books or logs (i.e. a document kept in the regular course of these entities' business reflecting the shareholders, their ownership percentages and any changes of same);
>
> (2) minutes of meetings of the shareholders or directors of Chester Mester and Serendipity relating to (a) Gyptec and/or the Panamanian Companies; and/or (b) the 2004 and 2005 wires;
>
> (3) financial records of Chester Mester and Serendipity (i.e., documents reflecting the entities' assets, income and expenses) relating to (a) Gyptec and/or the Panamanian Companies; and/or (b) the 2004 and 2005 wires; and
>
> (4) tax filings of Chester Mester and Serendipity reporting information relating to reporting information relating to (a) Gyptec or the Panamanian Companies; and/or (b) the 2004 and 2005 Wires.

ECF No. [82] at 18. In opposition, Hakim argues that Gyptec seeks to expand the original subpoena by seeking the production of documents to determine the source of the investments that Hakim made into Gyptec, and to forensically examine the "origin" of the

investments, ECF No. [86] at 10.   Hakim further contends that Gyptec now seeks documents that improperly delve into personal and confidential financial information, including that of Hakim's parents.

A close reading of the description of the first subset of the documents, *i.e.* (1), requested by Gyptec supports the Respondent's contention that the Chester Mester and Serendipity documents currently sought include documents that extend beyond documents responsive to the original Subpoena and that are not necessary for the foreign litigation.  Specifically, the first subset of documents described by Gyptec, *i.e.,* documents and communications concerning the shareholders and directors of Chester Mester and Seredipity from 2004 to date, seeks production of *all* documents concerning the shareholders and directors of Chester Mester and Serendipity, which presumably would capture documents that are not related to loans and/or other financing made to or on behalf of Gyptec or the Panamanian Companies.  Although Gyptec provides more specificity regarding the documents in the parenthesis following the description of that subset, the request, as drafted, is too broad.   While documents that would assist Gyptec in determining whether Hakim holds an ownership in Chester Mester and Serendipity are undoubtedly relevant to the foreign action or contemplated action, Gyptec's request, as drafted, seeks documents beyond those, and thus, the undersigned denies Gyptec's request to compel this subset of Chester Mester and Serendipity documents.  To the extent that this request could be narrowed so that only relevant documents are sought, the relevant documents are captured by the remaining subset of this category  ore other discovery requests.

The other three subsets of documents related to the minutes of meetings, financial records and tax filings from Chester Mester and Serendipity, in contrast, are specifically limited to documents and communications related to Gyptec and/or the Panamanian Companies or the specific wire transfers made in 2004 and 2005.  As

reflected by Hakim's deposition testimony, such documents clearly fall within the scope of documents intended to be captured by the original subpoena and are pertinent to establishing ownership of Gyptec and/or the Panamanian Corporations. In particular, the following exchange occurred at Hakim's deposition:

> Q:     How did you become an owner of one third of Arkata and Ukiah as a result of investments of Serendipity and Chester Mester?
>
> . . .
>
> A:      The loan that Chester Mester did as well as the loan that Alejandro Hakim Dow did went to buy the land where Gyptec is constructed. And that money was later capitalized under Arkata and Ukiah. And that loan came to Alex Hakim, Jorge Hakim and Carlos Hakim. So that money was used to buy the land. And that was later capitalized under Arkata and Ukiah.
>
> The other money that was put by Serendipity to Skyline and to Gyptec went into the company as capitalizations from Arkata and Ukiah.

ECF No. [82-5] at 36. Hakim further testified:

> A. . . . The wire transfer by Chester Mester for $400,000 that went into Skyline Financial account. . . . was a loan from my father the Alex Hakim, Jorge Hakim and Carlos Hakim , as well as the loan in an equivalent amount that was done by Alejandro Hakim Dow to the three of us.
>
> These monies went to buy land, which was later capitalized as coming from Arkata and Ukiah.
>
> . . . .

ECF No. [82-5] at 36. Thus, Hakim's deposition testimony makes clear that the documents currently sought by Gyptec from Chester Mester and Serendipity go to the central issue of this action, what ownership interest Hakim holds in Gyptec based upon purported financial contributions from those two entities. As such, the Respondent is required to produce the responsive documents.

2. *Documents Regarding Trusts That Supposedly Own Chester Mester and Serendipity*

As to the next category of documents, Gyptec seeks to have Hakim produce all documents and communications concerning (1) the beneficiaries, trustees and grantors of the Chester Mester and Serendipity Trusts from 2004 to date, including trust agreements; (2) Mr. Hakim's rights as beneficiary of the Chester Mester and Serendipity Trusts; (3) financial records of the Chester Mester and Serendipity Trusts (i.e., documents reflecting the Trusts' assets, income and expenses) relating to (a) Gyptec and/or the Panamanian Companies; and/or (b) the 2004 and 2005 Wires; and (4) tax filings of the Chester Mester and Serendipity Trusts reporting information relating to (a) Gyptec and/or the Panamanian Companies, and/or (b) the 2004 and 2005 Wires, ECF No. [82] at 19-20.

For the same reasons discussed above regarding the documents Gyptec seeks related to Chester Mester and Serendipity, as opposed to the trusts of those entities, the undersigned concludes that most of the requested documents fall within the scope of the subpoena issued by this Court and must be produced in compliance with that subpoena. The Respondent has not provided an explanation of why those documents generally do not fall within the subpoena at issue, and why those documents are not relevant to the issue of determining ownership of Gyptec through financial contributions by Hakim. However, again, the first subset of documents described by Gyptec include *all* documents concerning the beneficiaries, trustees and grantors of Chester Mester And Serendipity Trusts from 2004 to date, which presumably would capture documents that are not related to loans and/or other financing made to or on behalf of Gyptec or the Panamanian Companies, and may not even be related to determining whether Hakim holds an interest in the entities of Chester Mester and Serendipity. Thus, the undersigned denies Gyptec's request to compel documents responsive to the first subset of

documents, *i.e.*, all documents and communications concerning the beneficiaries, trustees and grantors of the Chester Mester and Serendipity Trusts from 2004 to date. To the extent that this request could be narrowed so that only relevant documents are sought, the relevant documents are captured by the remaining subset of this category ore other discovery requests. The Respondent however, shall produce all documents responsive to the second, third and fourth subsets of documents sought pertaining to the Chester Mester and Serendipity Trusts from 2004 to date.

3.    *Documents Regarding a Letter of Credit for Gyptec*

Gyptec contends that Defendant Hakim maintains that in 2007, he and his father obtained a Letter of Credit from a Swiss bank for the benefit of Gyptec, ECF No. [82-3] at 4. Gyptec seeks to have the Respondent produce all communications between (1) him and/or his father and the Swiss Bank regarding the Swiss Letter of Credit and/or (2) Mr. Hakim and any third party, including his father regarding the Swiss Letter of Credit, ECF No. [82] at 21.

In response, Respondent Hakim contends that the document regarding the Swiss Letter of Credit is already in Gyptec's possession. Respondent further argues that case law holds that a Letter of Credit does not constitute a "loan" but instead is an obligation that the bank itself must pay to an individual designated by its client, ECF No. [86] at 10.

Gyptec replies that whether the Letter of Credit is a loan or not is of no moment here because the case has nothing to do with whether the person facilitating the loan, *i.e.* Mr. Hakim, as opposed to his Swiss Bank provided the loan, ECF No. [92] at 8.

The undersigned has reviewed the relevant deposition testimony of Mr. Hakim related to the Swiss Letter of Credit and agrees with Gyptec. The Respondent has not denied Gyptec's assertion that Hakim and his father obtained a Letter of Credit from a Swiss bank for the benefit of Gyptec. Nor has Hakim explained why the Letter of Credit or communications related thereto do not fall within the scope of the subpoena. In

addition, Hakim has not contended that producing the letter, which Hakim contends is already in Gyptec's possession, and any related correspondence is unduly burdensome. As such, Hakim must produce the Letter of Credit and any related correspondence.

### 4. *Documents Regarding New Panamanian Proceedings*

Gyptec contends that in November 2017, Gyptec learned that in August of 2017, Defendant Hakim initiated a proceeding in Panama to claim his one-third shares in the Panamanian Companies from the holders of those shares. Gyptec seeks to have the Respondent produce all documents and communications concerning all proceedings that Dr. Hakim has initiated in Panama relating to (1) Gyptec; (2) the Panamanian Companies; and/or the 2004 and 2005 Wires, ECF No. [82] at 21.

Hakim responds that the production of such documentation is overly broad and burdensome because the issue of Hakim's ownership has been litigated for years in Panama. Hakim further contends that the request seeks attorney client communications that would necessitate the creation of a privilege log. Hakim further argues that entities controlled or owned by his cousin Tawil, (Gyptec's principal) involved in all such litigation, and thus are privy to all Panamanian filings.

In Reply, Gyptec concedes that Hakim's claims have been litigated in Colombia and Panama for years, and contends that it is for this reason that Gyptec needed to bring this 1782 action in the first instance, ECF No. [92] at 8. Gyptec further argues that it does not seek privileged communications regarding the Panamanian proceedings.

The undersigned concludes that Hakim has the better of this argument, and that the request Gyptec makes as to these documents is overbroad. In addition, Gyptec has not disputed the Respondent's contention that production of the requested documents would be burdensome, which is not surprising given that Gyptec seeks all documents and communications concerning all proceedings that Dr. Hakim has initiated in Panama relating to (1) Gyptec; (2) the Panamanian Companies; and/or the 2004 and 2005 Wires.

Nor does Gyptec deny the Respondent's contention that his cousin Tawil, and thus Gyptec, has actual access to the documents because he or entities he controls are involved in the Panamanian proceedings, or might otherwise have access to those filings and related documents. Finally, because the entities herein have not provided much detail regarding the Panamanian proceedings, it is not entirely clear from this record whether the bulk of the documents sought and/or related to those proceedings would demonstrate the financial investments or capital contributions that the Respondent or his family made related to Gyptec. Simply put, as drafted, the description of the documents that Gyptec seeks to have produced from the Panamanian proceedings is too broad, and not within the scope of the subpoena.

### 5. *Documents Regarding the Gil Affidavit*

The affidavit of Jorge Hernan Gil Echeverry ("Gil Affidavit") was filed in this action in support of the Respondent's Motion to Quash and/or Vacate the Court's Order Granting Gyptec's § 1782 Application, ECF No. [27-1]. Gyptec asserts that the Gil Affidavit is an opinion of one of the arbitrators in a Colombian arbitration in 2010 which interprets the arbitration panel's award, ECF No. [82] at 22. Gyptec notes that the Gil Affidavit was struck as untimely and as an improper sur-reply in this action, ECF No. [82] at 22. Nonetheless, Gyptec requests the Respondent Hakim produce all documents and communications concerning the Gil Affidavit, including any written communications between his attorneys or any other agents, and Mr. Gil. To support its request, Gyptec argues that Gyptec has requested all documents concerning any capital contribution to the Panamanian Companies, and the Gil Affidavit is about an arbitration award that addressed Respondent Hakim's claim of ownership over one-third of the Panamanian Companies and Gyptec as a result of his supposed capital contributions via the 2004 and 2005 wires.

Respondent Hakim contends that the documents sought by Gyptec related to the Gil Affidavit were not in existence at the time the subpoena and application were submitted to this Court, and thus necessarily are not within the scope of the subpoena, at issue.  Respondent further contends that the documents sought have nothing to do with the capital contributions made by Dr. Hakim to Gyptec, and that Gyptec merely wants to gain information about the defense and/or prosecution of claims by the Hakim.  Respondent also contends that disclosure of the documents would invade the work-product or attorney client privilege.

The undersigned has carefully reviewed the Gil Affidavit, ECF No. [27-1], and concludes that certain documents related to the Affidavit should be produced.  First, assuming *arguendo* that categories of documents not drafted until after this action was initiated are not within the scope of the subpoena, it appears that many of the documents relied on by Gil in drafting the Affidavit were in existence prior to this action.  By way of example, the Affidavit refers to a Purchase and Sales Agreement related to shares held in Arkata Investment and Ukiah International Corp.  While it is likely that Gyptec is already in possession of this document and other such documents from the 2010 arbitration, the Respondent has not contended that the production of such documents is burdensome.  In addition, based on a review of the Affidavit, it appears that the documents relied upon in drafting the Affidavit are relevant to the claims raised by Gyptec.  However, to the extent that Hakim contends that that Gil Affidavit documents are not subject to disclosure because of the work product doctrine or attorney client privilege, the Respondent shall produce a privilege log to Gyptec which provides enough detail for Gyptec to challenge the protection asserted over each document withheld, if warranted.

6.     *Notes of a Meeting with USG.*

Gyptec seeks production of notes from a meeting that occurred between Hakim and USG, International.  In his response, Hakim states that there are no documents

responsive to this request, ECF No. [86] at 7, n. 3.  In reply, Gyptec states that its reply memorandum does not focus on notes from the meeting between Hakim and USG because Hakim states that he does not believe that such notes exist, ECF No. [92] at 4, n. 1.

Accordingly, the undersigned denies Gyptec's request to compel production of notes from the meeting with USG, as it appears that both Gyptec and Hakim believe that such notes do not exist.

C.    *Rule 26 Certification*

Gyptec contends that Hakim's Counsel failed to provide a certification as required by Federal Rule of Civil Procedure 26(g) which Gyptec contends applies equally to § 1782 actions.  In response, Hakim argues that a Rule 26 Certification is not required in § 1782 actions as the Rule applies only to "initial disclosures" and related discovery found under Rule 26(a)(1), ECF No. [86] at 15-16. Hakim further notes that Rule 26(a)(1)(A), which requires parties to provide initial disclosures, specifically exempts proceedings that fall under 26(a)(1)(B), which includes ancillary proceedings to a proceeding in another court. See Fed. R. Civ. P. 26(a)(1)(B)(viii).  Hakim further argues that the pretrial disclosures required under Rule 26(a)(3), which are also subject to the Rule 26(g) certification requirement, necessarily only apply to actions where there will be a trial, which will not occur in the action at bar.  Finally, Hakim argues that for all practical purposes, Hakim has satisfied this requirement, at least in spirit, by assuring Gyptec's Counsel at the deposition that all documents responsive to the subpoena have been produced.

Here, Counsel for Hakim concedes that Hakim has not provided a Rule 26 certification but argues that the requirement does not apply to an action akin to the one currently before the Court.  While Hakim is correct that ancillary proceedings are exempted from the initial disclosure requirements under Rule 26(a)(1)(A), and the pretrial

21

disclosures requirements under Rule 26(a)(3) presumably only apply to disclosures in contemplation of evidence to be presented at trial, Hakim omits from his analysis that portion of Rule 26(g) that requires that every discovery request, response, or objection be signed by at least one attorney or record.  Rule 26(g) expressly states the following:

> **Signing Disclosures and Discovery Requests, Responses, and Objections.**
>
> **(1) Signature Required; Effect of Signature. Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name--or by the party personally, if unrepresented--and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:**
>
> **(A) with respect to a disclosure, it is complete and correct as of the time it is made;**
> **. . . .**

Fed. R. Civ. P.  26(g). Thus, the Rule requires that even disclosures made independently from the required initial disclosures or pretrial disclosures must be signed.  There is nothing in the Rule 26(g) mandates that exempt actions pursuant to § 1782, or any other ancillary actions, from complying with this requirement.  Further, and as correctly noted by Gyptec, once discovery is permitted in a § 1782 action, Rule 26 provides the rules for the manner in which the discovery is conducted.  Also, there is no indication that the Rule 26(g) signing requirement may be met by a litigant assuring opposing counsel that all responsive documents have been produced. As such, Hakim's Counsel must comply with the signing requirement of Rule 26(g).

      D.    *Request for Additional Deposition for Respondent Hakim*

Gyptec seeks to have Respondent Hakim produced for another day of deposition questioning related to (1) questions he did not answer on advice of counsel at the first

deposition; and, (2) questions regarding new documents that the Court requires him to produce, ECF No. [82] at 24-25.

The Parties disagree as to whether Respondent's Counsel's instructions to the Respondent not to answer certain questions during his deposition were proper. Gyptec contends that to the extent that Respondent's Counsel objected and directed the Respondent to not answer certain questions as being irrelevant or beyond the scope of the subpoena, such objections were in violation of Fed. R. Civ. P. 30(c)(2) which only permits a person to be instructed not to answer when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion to terminate or limit pursuant to Rule 30(d)(3).

Gyptec correctly notes that the only proper grounds upon which counsel may direct its client to not answer deposition questions are set for the in Rule 30(c)(2). However, Counsel for Hakim contends that each time he instructed Hakim not to answer it was predicated upon asserting a privilege or enforcing a limitation ordered by the court, which Hakim contends in this case was the limited scope of the subpoena. On this latter point, Hakim contends that the subpoena approved by the Court permitted deposition questions as to the source of investments in capital contributions or loans to Gyptec or the Panamanian Companies, but did not extend to the "origin of the funds." ECF No. [86] at 18. Hakim thus objected to questions regarding the makeup of certain entities, the Trusts and tax issues as being outside the scope of subpoena limitation, which he contends provided a basis for Counsel instructing Hakim not to answer those questions.

The undersigned has reviewed the relevant deposition testimony and concludes that, on this issue, Counsel for Hakim has too narrowly construed the subpoena approved by the Court. Although the subpoena refers to the "origin" of the funds contributed to Gyptec or the Panamanian Companies, the ownership of the Trusts or

entities which served as the origin of those funds, clearly is within the scope of relevant information as it pertains to determining whether loans or contributions were made on behalf or by Hakim. As such, the information is discoverable, absent a privilege or other protection which prohibits that disclosure. In any event, relevance is not a basis for instructing a deponent not to answer. Accordingly, Hakim must answer the questions that he was instructed not to answer solely on the basis that such questions exceeded the scope of the subpoena.

As to Hakim's contention that the information sought related to his tax returns is privileged, to the extent that the questions required the disclosure of attorney client privileged communications, the instruction to Hakim to not answer such questions was appropriate. However, to the extent that the questions generally pertained to his tax returns and how those returns reflected financial dealings related to Gyptec or the Panamanian Companies, those questions are not objectionable simply because they pertain to Hakim's tax returns. Rather, in this case, the deposition transcript reflects that the questions centered around Hakim's decision not to include certain information related to his ownership of Gyptec or the Panamanian Companies in his tax returns, which reasonably could be used by Gyptec in an attempt to establish that Hakim did not believe that he owned those entities, and thus did not report them on his taxes. Further, Gyptec did not request that Hakim produce his tax returns and thus to the extent that the cases cited by Hakim involve litigants having to produce tax returns when the requesting party failed to demonstrate the relevance of or a compelling need for the production of those returns, those cases are not applicable. See ECF No. [86] at 18.

The undersigned is aware that Hakim was previously deposed for approximately seven hours. However, given the complex nature of this action, and the number of documents at issue, the undersigned concludes that pursuant to Fed. R. Civ. P. 30 (d)(1), additional time is warranted in order to fairly examine the deponent. Accordingly, Hakim

must appear for an additional day of deposition questioning related to (1) questions he did not answer on advice of counsel at the first deposition; and, (2) questions regarding new documents that the Court has directed him to produce in this Order, as set forth above. Counsel for Hakim shall only raise objections to the questions asked based upon a privilege, or other grounds set forth in Fed. R. Civ. P. 30(c)(2), and/or to the extent that such objections are consistent with the undersigned's rulings contained in this Order.

## IV. CONCLUSION

Therefore it is hereby

**ORDERED AND ADJUDGED** Applicant Gyptec, S.A.'s Motion to Compel Production of Documents from Carlos Hakim-Daccach and for Additional Day of Deposition, ECF No. [82], is **GRANTED, in part.** On or before, November 1, 2018, the Respondent Carlos Hakim-Daccach shall produce certain documents identified by Gyptec as discussed above in this Order, as follows:

1.     **Documents Regarding Chester Mester and Serendipity**

All documents and communications concerning:

(1)  minutes of meetings of the shareholders or directors of Chester Mester and Serendipity relating to (a) Gyptec and/or the Panamanian Companies; and/or (b) the 2004 and 2005 wires;

(2) financial records of Chester Mester and Serendipity (i.e., documents reflecting the entities' assets, income and expenses) relating to (a) Gyptec and/or the Panamanian Companies; and/or (b) the 2004 and 2005 wires; and

(3) tax filings of Chester Mester and Serendipity reporting information relating to reporting information relating to (a) Gyptec or the Panamanian Companies; and/or (b) the 2004 and 2005 Wires.

2.      **Documents Regarding Chest Mester and Serendipity Trusts**

All documents and communications concerning:

(1) Mr. Hakim's rights as beneficiary of the Chester Mester and Serendipity Trusts;

(2) financial records of the Chester Mester and Serendipity Trusts (i.e., documents reflecting the Trusts' assets, income and expenses) relating to (a) Gyptec and/or the Panamanian Companies; and/or (b) the 2004 and 2005 Wires;

(3) tax filings of the Chester Mester and Serendipity Trusts reporting information relating to (a) Gyptec and/or the Panamanian Companies, and/or (b) the 2004 and 2005 Wires.

3.  **Documents Regarding a Letter of Credit for Gyptec**

All communications between:

(1) Hakim and/or his father and the Swiss Bank regarding the Swiss Letter of Credit and/or

(2) Hakim and any third party, including his father regarding the Swiss Letter of Credit

4.  **Documents Regarding the Gil Affidavit.**

When those documents are produced, Counsel for Respondent Carlos Hakim-Daccach shall ensure that the dictates of Federal Rule of Civil Procedure 26(g) are complied with, including a signature on all disclosures certifying that the disclosure is complete and correct as of the time it was made.  It is further

**ORDERED AND ADJUDGED** on or before, November 1, 2018, the Respondent Carlos Hakim-Daccach shall provide a privilege log for documents withheld on the basis of the work product doctrine, attorney client privilege or any other applicable privilege. The privilege log shall specify the document withheld, the author and recipients of the document and provide a description of the document sufficient for Gyptec to challenge the asserted protection or privilege, if appropriate.  It is further

**ORDERED AND ADJUDGED** that Carlos Hakim-Daccach shall appear at a second deposition, not to exceed seven hours, on or before November 30, 2018, or such later date to which the parties agree, to answer questions related to (1) questions he did

not answer on advice of counsel at the first deposition; and, (2) questions regarding new documents that the Court has required him to produce in this Order.

DONE AND ORDERED in Miami, Florida, in chambers, on September 28, 2018.

ANDREA M. SIMONTON
CHIEF UNITED STATES  MAGISTRATE JUDGE


Copies furnished to:
Honorable Kathleen M. Williams
All counsel of record via CM/ECF